# EXHIBIT Q

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
FEB 05 2019
JAMES W. McCORMACK, CLERK
By: DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JASON M. RYBURN,

Plaintiff

v.

ALIERA HEALTHCARE, a Delaware corporation; I HEALTH AND LIFE INSURANCE SERVICES, a California corporation; and RAYMOND GIUDICI, individual.

Defendants.

Case No.: 4:19-cv-35-JM

**FIRST AMENDED COMPLAINT FOR DAMAGES, STATUTORY DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Originally filed: December 14, 2018

Comes now Plaintiff, JASON RYBURN ("Plaintiff"), pro se, for Plaintiff's Complaint against the Defendants, ALIERA HEALTHCARE (Aliera), I HEALTH AND LIFE INSURANCE SERVICES (I Health), and RAYMOND GIUDICI (collectively "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## I. NATURE OF THE CASE

1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricited telemarketing… can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243. §2(5)(1991)(47 U.S.C. § 227).

2. The National Do Not Call Registry allows consumers to register their telephone number and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

3. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227; 47 C.F.R. § 64.1200(c)(2).

**Automated Telemarketing Calls are Prohibited by the TCPA**

4. The TCPA makes in unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

5. The Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

"[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency

situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy."

Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions*, LLC, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

**The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission Telemarketing Calls.**

7. Under the TCPA, an individual such as Mr. Giudici may be personally liable for the facts alleged in this Complaint pursuant to 47 U.S.C. § 217, which reads in part, "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

8. When considering individual officer liability, other courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson's Five Star Catering, Inc. v. Beason*, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they had direct, personal participation in or personally authorized the conduct found to have violated the statute."") *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415016 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."). See also, *Sandusky Wellness Center, LLC v. Wagner Wellness*, Inc., 2014 1333472 at *3 (N.D. Ohio Mar. 28, 2014)).

9. Defendant Giudici is personally liable under the "participation theory" of liability because he is the principal executive of I Health and Life Services, he knew about I Health's

violations and he directed employees and/or agents of I Health to continue making violations. Mr. Giudici authorized and oversaw I Health's marketing process.

10. Furthermore, Mr. Giudici was responsible for Defendants' TCPA compliance and is, therefore, personally liable.

## II. JURISDICTION and PARTIES

11. Plaintiff, Jason M. Ryburn, is a resident of the state of Arkansas, Pulaski County, residing in Little Rock.

12. Defendant, Aliera Healthcare, Inc. (Aliera), is a Delaware corporation with its corporate office in Atlanta, Georgia, which advertises and transacts business in the state of Arkansas, including Pulaski County. Aliera is registered to conduct business in Arkansas and may be served through its registered agent, The Corporation Company, at 124 W. Capital Avenue, Little Rock, AR, 72201.

13. Defendant, I Health and Life Insurance Services (I Health), doing business as "I Life and Health Insurance Services," is a California company with its corporate office in Fresno, California, which advertises and transacts business in the state of Arkansas, including Pulaski County. I Health may be served through its registered agent, David Emerzian, 7647 N. Fresno St., Fresno, CA 937203.

14. Defendant, Raymond Giudici, Chief Executive Officer of "I Life and Health Insurance Services," is a California individual residing in Fresno, California. Mr. Giudici may be served at his listed address, 1050 E. Perrin Ave. Ste. 107, Fresno, CA 937203.

15. Each of the calls made to Plaintiff's personal cell phone was received in Arkansas. Aliera directly employs multiple persons who reside and operate in Arkansas, is registered to do business in Arkansas, and Defendants were told by Plaintiff during the calls at issue that Plaintiff was a resident of and physically within the state of Arkansas.

16. Jurisdiction and venue are proper and this Court has original jurisdiction over this action pursuant to 28 U.S.C § 1331, because it is a civil action involving federal questions under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

## III. FACTUAL ALLEGATIONS

17. Plaintiff is, and has been at all relevant times, the authorized user and controller of his personal cell phone number: (501) 231-5622.

18. Plaintiff's cellular phone number, (501) 231-5622, has been registered with the National Do Not Call list since February 26, 2010.

19. At all times mentioned herein, Aliera, I Health, and Raymond Giudici, (Defendants), and each of them, were an agent or joint venture of each of the other(s), and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

20. The Defendants' telemarketers stated during the majority of the calls at issue that they were authorized to market and sell Aliera Health Plans and repeated a nearly identical sales script in that effort.

21. Plaintiff has no business relationship with the Defendants and never requested, prompted, or consented to these telemarketing calls. They were placed to his personal cellular phone for no legitimate purpose other than to solicit business for Defendants.

22. Defendants are in the business of selling healthcare plans and products and/or enrolling customers in healthcare plans and products. The Aliera health plans that were marketed to Plaintiff include services by multiple entities, but all plans advertised in these calls are marketed, packaged, managed and sold by Defendants.

23. Plaintiff pleads on information and belief that sixteen (16) autodialed telemarketing calls were made by the Defendants to Plaintiff's personal cell phone. The calls occurred on or between December, 2017 and April, 2018.

24. On December 12, 2017, Defendants placed the initial call to Plaintiff's cellular phone from 206-573-7236. This call was answered by Plaintiff and a prerecorded message was played advertising health insurance and stating that "I Life has a solution." I Life is a DBA for I Health and Life Insurance Services. Plaintiff pressed "nine" to be removed from Defendants calling list.

25. On January 3, 2018, Defendants placed a second call to Plaintiff's cell phone. This call played the same prerecorded message, including the DBA name, "I Life." Plaintiff hung up after hearing the same prerecorded message.

26. On January 25, 2018, Defendants placed a third call from 270-201-5929 to Plaintiff's cell phone. This call played the same prerecorded message including the DBA name, "I Life." Defendant, in an effort to identify the caller, pressed "one" to speak to a live person. "Robert" answered and stated that he was with "I Life." Plaintiff answered the cursory screening questions asked by "Robert" and was then transferred to another party. This party identified himself as "Byron," who asked where Plaintiff was located and other screening questions, which Plaintiff answered. "Byron" proceeded to explain that open enrollment would end soon and then asked further screening questions, which Plaintiff answered. "Byron" then described a plan sold by "Aliera Healthcare." "Byron" also pointed Plaintiff to "alierahealthcare.com" and further stated that he was calling from California, and that a marketing team "probably" contacted Plaintiff. "Byron" then stated that he worked for "I Life and Health," the DBA for I Health and Life Insurance Services. Despite Plaintiff asking what alternative plans "Byron" would sell to Plaintiff, "Byron" did not market any other plan or product.

27. On January 26, 2018, Defendants placed a fourth call from 760-444-4509 to Plaintiff's cell phone. During this call, "Byron" attempted to sell the Aliera plan again and confirmed that

he had no other product or plan to offer to Plaintiff after Plaintiff asked directly for a different product.

28. On February 1, 2018, Defendants placed a fifth call from 239-900-1201 to Plaintiff's cell phone. This call played similar prerecorded message marketing health insurance. Plaintiff pressed "one" to speak to a live person. That live person answered after a computerized "bloop" noise and stated that his name was "Ira." "Ira" transferred Plaintiff to a live person who identified himself as "Alex" after another computerized "bloop" noise. "Alex" stated that he was with "I Life and Health." "Alex" attempted to sell an "Aliera Care" plan after acknowledging that Plaintiff resided in Arkansas and after asking several basic screening questions, including some of the requirements for a "cost sharing plan." "Alex" stated that the website for "Aliera Care" was "I Life and Health," but then stated that the website was "alierahealthcare.com" After additional questioning, "Alex" stated that the website for "I Life and Health" was "ilifeandhealth.com." Plaintiff refused to give "Alex" permission to call his cell phone during this call.

29. On February 13, 2018, Defendants placed a sixth call from 201-353-1204 to Plaintiff's cell phone. This call began with a prerecorded message advertising health insurance. Plaintiff pressed "one" to speak with a live person and was transferred to "Chad" after a computerized "bloop" sound who initially stated "Thank you for taking my call." During this call, the caller asked the same questions and did not have any information about Plaintiff except that Plaintiff was located in Arkansas and again transferred Plaintiff to a second person. The Second person on this call identified himself as "Levonne." "Levonne" asked the same questions as the previous callers and attempted to sell an Aliera Healthcare plan.

30. On February 20, 2018, Defendants placed a seventh call from 208-606-4285 to Plaintiff's cell phone. Plaintiff pressed "one" to speak with a live person and was transferred to "Trevor" after a computerized "bloop" sound. The initial live person asked the same questions and did not have any information about Plaintiff except that Plaintiff was located in Arkansas and again transferred Plaintiff to a second person. The second person identified himself as "Joey," a "licensed agent." "Joey" asked the similar screening questions as the previous callers and attempted to sell an Aliera Healthcare plan to Plaintiff by reciting a script. "Joey," when asked if he could sell any other product or service, told Plaintiff that he could sell "Primacare," which is listed as a product sold by Aliera on alierahealthcare.com. "Joey" acknowledged that both plans were Aliera Healthcare plans/products. "Joey" stated that he was located in California but Aliera was a Georgia company. "Joey" also stated that if Plaintiff wanted to buy an Aliera product or plan, he would be charged that day by the "Enrollment Center" after agreeing to a contract via recorded statement. "Joey" stated that Plaintiff would then be contacted by Aliera Healthcare by email and would then receive enrollment documents within ten days. "Joey," after being asked if his employer was contracted by Aliera to make telemarketing calls and sell Aliera products, acknowledged the same. He further stated that Aliera was located in Atlanta, Georgia and quoted a price for the plan. Plaintiff stated at the end of this call that he revoked any permission the callers may have had to call his cell phone in an effort to end the telemarketing calls. Plaintiff did not at any time consent to be called by Defendants on his cell phone.

31. On February 27, 2018, Defendants placed an eighth call from 214-612-5759 to Plaintiff's cell phone. This call played the same prerecorded message as the previous call and followed the same pattern as the previous call after Plaintiff pressed "one."

32. On March 9, 2018, Defendants placed a ninth call from 1-202-866-7291 to Plaintiff's cell phone. This call played the prerecorded message which named "I Life" and followed the same pattern as the previous call after Plaintiff pressed "one." The final caller attempted to sell Plaintiff an Aliera Healthcare plan.

33. On March 13, 2018, Defendants placed a tenth call from 1-202-866-7291 to Plaintiff's cell phone. This call played the prerecorded message which named "I Life" and followed the same pattern as the previous call after Plaintiff pressed "one." The final caller attempted to sell Plaintiff an Aliera Healthcare plan and asked for a debit card, credit card, or electronic check as payment.

34. On March 13, 2018, Defendants placed an eleventh call to Plaintiff's cell phone from 1-760-444-4509. The Defendants left a voicemail message on Plaintiff's phone indicating that he had been speaking to Plaintiff and was calling to sell an Aliera Healthcare plan.

35. On March 13, 2018, Defendants placed a twelfth call to Plaintiff's cell phone from 1-760-444-4509. The Defendants left a voicemail message on Plaintiff's phone containing only muffled voices and sounds.

36. On March 14, 2018, Defendants placed a thirteenth call to Plaintiff's cell phone from 1-760-444-4509. This call began with a prerecorded message advertising health insurance. Plaintiff pressed "one" to speak with a live person and was transferred to "James" after a computerized "bloop" sound. During this call, the caller asked the same questions as previous callers and did not have any information about Plaintiff except that Plaintiff was located in Arkansas and again transferred Plaintiff to a second person. The second person on this call asked similar screening questions as the previous callers and attempted to sell a "Primacare" plan, which is an Aliera Healthcare plan- as confirmed by the caller. When Plaintiff asked the

caller if he sold the healthcare options advertised in the prerecorded message, the caller stated that he could not sell those plans. This caller hung up on Plaintiff when asked what company he worked for.

37. On March 15, 2018, Defendants placed a fourteenth call to Plaintiff's cell phone from 1-202-866-7291. This call began with the same prerecorded message advertising health insurance. Plaintiff pressed "one" to speak with a live person and was transferred to "Michael" after a computerized "bloop" sound. During this call, the caller asked the same questions as previous callers and did not have any information about Plaintiff except that Plaintiff was located in Arkansas and again transferred Plaintiff to a second person. "Michael" attempted to transfer Plaintiff to a second person but the call disconnected after several minutes of hold music.

38. On April 9, 2018, Defendants placed a fifteenth call to Plaintiff's cell phone from 202-866-7291. This call began with the same prerecorded message advertising health insurance. Plaintiff pressed "one" to speak with a live person but the call failed to transfer and was dropped.

39. On April 20, 2018, Defendants placed a sixteenth call to Plaintiff's cell phone from 1-518-216-0738. This call began with the same prerecorded message advertising health insurance. Plaintiff pressed "one" to speak with a live person but the call failed to transfer and was dropped.

40. Plaintiff pleads on information and belief that Defendants' calling devices are "autodialers," and as such, are devices that have the capacity to—and actually do—produce, store and call telephone numbers using a random or sequential number generator meeting the statutory definition of automatic telephone dialing system ("ATDS") within the TCPA.

41. When Plaintiff answered these calls, he heard either a prerecorded message advertising health insurance and requesting that he "press 1" or other numbers at various prompts during the pitch, or in some limited circumstances there was a pause while the auto-dialer connected the call

to a live sales representative. The live representatives apparently had no knowledge of Plaintiff's name or any information about Plaintiff except his personal cellular phone number.

42. Defendants are not licensed to sell insurance in Arkansas and could not legally sell Plaintiff any of the insurance products advertised in the pre-recorded message which was played at the beginning of the calls at issue.

43. During all of the calls in which Plaintiff spoke to a live person, the Defendants' telemarketers attempted to sell an Aliera Healthcare plan to Plaintiff after asking a series of basic and cursory screening questions. At no time did one of these callers attempt to sell anything but an Aliera plan and, in fact, made it clear on multiple occasions that they could not or would not sell any other plan to Plaintiff.

44. Plaintiff pleads on information and belief that I Health and Raymond Giudici acted on behalf of Aliera at all relevant times, were directed and controlled by Aliera, and were engaged solely in the marketing and sale of Aliera's products and services during the calls at issue by use of autodialed telemarketing utilizing prerecorded marketing messages. Plaintiff further pleads that Aliera authorized and ratified these sixteen (16) calls and the process by which they were made.

45. Plaintiff pleads on information and belief that Defendants placed these calls and/or caused the calls to be made and that Aliera trains call center employees and distributes information to its agents for the purpose of selling Aliera health plans or products through telemarketing. At all relevant times, Defendants ratified, were fully in control of, and were responsible for these marketing activities and the sixteen (16) telemarketing calls placed to Plaintiff's personal cellular phone.

46. At no time did Plaintiff give consent to be called by Defendants, written or otherwise. Interest was feigned by Plaintiff only in an attempt to identify the callers, the products, and the services being advertised by the telemarketers.

47. Prior to, during, and following these calls, Plaintiff did not conduct any business with Defendants or provide his cellular telephone number to Defendants.

26. Defendants did not have Plaintiff's prior written express consent to make the calls at issue.

48. Plaintiff received these calls on his private cellular telephone, as defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with AT&T as a cellular telephone number and is used for personal, lawful purposes.

49. These telemarketing solicitations constituted "calls" under the TCPA that were not for emergency purposes.

50. Plaintiff suffered actual damages, including but not limited to: invasion of privacy, depletion of his cell phone battery, wasting his time and cellular minutes/data and preventing Plaintiff from using his telephone for lawful, personal purposes. On at least one occasion, one of the calls woke Plaintiff's six day old daughter, invading the privacy of Plaintiff, Plaintiff's spouse and Plaintiff's newborn child.

51. Plaintiff alleges that these telephone sales calls and/or "robocalls" violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR 64.1200(a)(1)(iii), 47 CFR 64.1200(a)(1), and 47 CFR 64.1200(c)(2).

52. Plaintiff alleges that Defendants and/or Defendants' agents used technology to disguise the phone numbers used to call Plaintiff's personal cellular phone.

53. Plaintiff alleges that these telephone sales calls and/or "robocalls" violated Arkansas' Deceptive Trade Practices Prohibition, A.C.A. § 4-88-107(a)(11)(A).

54. Plaintiff alleges that these calls were made intentionally, in that the number called was the number that Defendants or Defendants' agents intended to call while marketing Aliera plans and products. Additionally, Defendants continued to call Plaintiff's cellular phone after being told to discontinue the calls and after Plaintiff pressed "nine" to be taken off of the calling list.

55. Plaintiff alleges that each of these sixteen calls was placed knowingly to Plaintiff's personal cellular phone number, a phone number with an Arkansas prefix that could have been confirmed as a personal cellular phone number had Defendants consulted the National Do Not Call Registry.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Negligent Violation of the TCPA's "Robocall" Prohibition, 47 U.S.C. § 227 et seq.**

56. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57. As a result of Defendants' and/or Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

58. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

**Knowing and/or Willful Violation of the TCPA's "Robocall" Prohibition,**

**47 U.S.C. § 227 et seq.**

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. As a result of Defendants' and/or Defendants' agents' knowing or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

61. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION

**Negligent Violation of the TCPA's "Sales Call" Prohibition,**

**47 U.S.C. § 227 et seq.**

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. As a result of Defendants' and/or Defendants' agents' negligent violations of 47 U.S.C. § 227(c)(3)(F) and 47 CFR 64.1200(c)(2), Plaintiff seeks $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

64. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**FOURTH CAUSE OF ACTION**

**Knowing or Willful Violation of the TCPA's "Sales Call" Prohibition,**

**47 U.S.C. § 227 et seq.**

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. As a result of Defendants' knowing or willful violations of 47 U.S.C. 227(c)(3)(F), and 47 CFR 64.1200(c)(2), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

67. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**FIFTH CAUSE OF ACTION**

**Negligent Violation of the TCPA "Caller ID Spoofing"**

**Prohibition, 47 U.S.C. § 227 et seq.**

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(e), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**SIXTH CAUSE OF ACTION**

**Knowing and/or Willful Violation of the TCPA**

**"Caller ID Spoofing" Prohibition, 47 U.S.C. § 227 et seq.**

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(e), Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**SEVENTH CAUSE OF ACTION**

**Knowing violations of Arkansas' Deceptive Trade Practices Prohibition,**

**A.C.A. § 4-88-107(a)(11)(A).**

72. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

73. Defendants or their agents willfully and knowingly employed deception when they concealed their true telephone number and caused its number to appear as if it came from various area codes through use of technology in violation of A.C.A. § 4-88-107(a)(11)(A) and is entitled to damages under A.C.A. § 4-88-113(f), to be determined by a jury.

## V. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully prays for a judgment against Defendants:**

1. For awards of $500 for each negligent violation as set forth in causes of action 1-6;
2. For awards of $1,500 for each knowing and/or willful violation as set forth in causes of action 1-6. (Total statutory damages: **$72,000.00** - 16 counts each of: "sales call," "RoboCall", and "caller ID spoofing"- with treble damages for each.)
3. For award of damages for violations of A.C.A. § 4-88-107(a)(11)(A) and under A.C.A. § 4-88-113(f), as set forth in cause of action 7, to be determined by a jury.
4. Injunctive relief against Defendant to prevent future wrongdoing;

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

Dated: February 5, 2019

Jason Ryburn, Esq.
Plaintiff, pro se
650 S. Shackleford Rd. Ste. 231
Little Rock, AR 72211